MARTIN *v.* MARTIN.

No. 18174. ARGUED APRIL 14, 1953—DECIDED MAY 11, 1953—REHEARING DENIED JUNE 11, 1953.

*Burt DeRieux* and *Marshall, Greene, Baird & Neely,* for plaintiff in error.

*Young H. Fraser, John R. Strother* and *Fraser & Shelfer,* contra.

WYATT, Justice. ■ The pendente lite exceptions complain because the trial judge refused to admit in evidence the testimony of the wife to the effect that the husband acquiesced in certain acts that were not in accordance with the judgment awarding permanent alimony. This was not error for the reason that we are here dealing with a judgment awarding permanent alimony, and the parties, or even the court itself, can not change or alter a decree of permanent alimony. *Wilkins* v. *Wilkins,*

146 *Ga.* 382 (91 S. E. 415) ; *Gilbert* v. *Gilbert,* 151 *Ga.* 520 (107 S. E. 490) ; *Coffee* v. *Coffee,* 101 *Ga.* 787 (28 S. E. 977) ; *Burks* v. *Mullins,* 206 *Ga.* 603 (57 S. E. 2d, 926).

■ The testimony upon which the trial court refused to adjudicate the defendant in error in contempt was that of the plaintiff in error and solely her testimony. For this reason we deem it proper to set forth here her testimony in full. It was as follows: "I am Charity Simons Martin. I now reside in Miami Shore, Florida. Back in 1947 I was the wife of the defendant in this case, Dr. Anthony J. Martin. In May of that year that marriage was dissolved by a divorce decree of this court. In that divorce decree I remember that my husband was charged with the support of two minor children. My then husband and I entered into an agreement which was made the judgment of the court as to alimony, support of the children and custody of the children. I recall in this agreement that there was as agreement that I should sell some property on Lenox Avenue. That property was our home that we built in 1940 and the agreement was that I was to sell the home and invest the proceeds in income-producing property. In pursuance of this order my property was sold. It brought $35,000 less the costs and everything; $34,000 plus, that is, approximately $35,-000. I invested that money in income-producing property. I have a duplex in Miami, Florida. The rent from one is $85 per month, which one is furnished; and the other unfurnished, which I do not get anything for. The taxes and maintenance have gone up. When I first bought it, each apartment was $100, and they have gone down. An itemized account of my income for 1951 is: One apartment was $900, and the other was $670. Depreciation $540, expenses $1018.19, or a loss of $38.49. The loss item consisted of the repairs and upkeep on it and depreciation. It came to that much more than the income. I lost money on it last year. You ask me shortly after this decree and judgment was entered in 1947, what determined that I was to invest this money in Miami, Florida, property? I say I looked in Atlanta for property and I did not seem to get anywhere with it. Dr. Martin helped me at first, and in the meantime I went down to visit my sister and mother in Miami, and she mentioned the fact that they would like for me to move down there; and

I came back and told Dr. Martin. I told him I was looking at an apartment down there. The apartments were all small, and somehow we talked of buying a single home. After this agreement and order of court and judgment, I moved into a single home in Miami. I bought a single home with a part of the proceeds of this sale. I also bought a duplex down there. My husband offered to pay me some money. He sent $100 per month. He started sending it right away after I went down there. Dr. Martin did not send me more than $100 a month. He stopped sending me $100 a month in August. The last one was July, 1952. He has not sent me anything since then. I have requested him to pay the money since then through a lawyer in Miami, and through Mr. DeRieux. I paid $20,000 for that duplex. Mr. DeRieux has the deed. I do not have the canceled check that I gave for this property. I was asked to bring it here with me, but I don't have it in my possession. I testified that I paid $20,000 for this duplex apartment house. You ask me what I did with the other $15,000? I say I bought a home. I bought an automobile, and I had a lot of money to pay back that I borrowed during the time I was married to Dr. Martin. This apartment is the only piece of income-bearing property that I bought, and I took the other $15,000 and bought an automobile and paid debts and bought a place to live in. I got a divorce from Dr. Martin in May, 1947. I did not buy this property until October, 1948, about fifteen months later. I lived in the house on Lenox Road until August, 1948. It was not sold until then. It was on the market all the time. The house was put on the market in 1947, and we remained there until August, 1948, when it was sold. In August, 1948, just after I sold the house, I went directly to Miami and then I bought this property in October. I had already bought the single home, and then looked for the apartment. The single home is my residence now. This single residence that I bought I am living in it now. I bought that in October, 1948. No, I bought it in September. As well as I remember, the date was August the 20th, 1948. In 1952 I had this apartment rented as follows: One was $85 per month, and the other one $75. You ask me what the taxes on this piece of property were in 1952? I say I don't know exactly; they have a city tax and a county tax.

They vary; it has gone up since I bought it. I said something about depreciation. By that I mean that it was not actually money lost, it was that a charge-off that I charged off for tax purposes. I did not have any actual costs on that property last year except repairs, insurance and taxes. The amount of the repairs and the taxes for 1952 were: Insurance was $71; that maintenance of the yard is $15 a month; the repairs I had last year, and electrical bill—I haven't got all of that itemized; there is a plumbing bill and an electrical bill. The approximate amount of the pumbing bill was about $15. The approximate amount of the electrical bill for 1952 was somewhere around $40. I had trouble with the wiring. We have garbage collection, too, which is $15, and we were charged for the year $30. I was paying that instead of the tenant. On the furnished apartment I pay the collection; on the unfurnished the tenant pays it. That is $15 each. The other costs were: the electrical bill was $42.07, and the tax was $493. That was in 1951. The amount of each item that that apartment cost me in repairs, upkeep, maintenance, taxes and insurance in 1951 was: the tax was $493.03, the yard maintenance was $180, water $36.28. I pay the water bill, which was $36.28. Garbage collection was $30. I only had to pay $15 of that in 1952. I just stopped paying it on the downstairs one this year. The tenant asked me to reduce the rent, and I took over the garbage. The insurance was $71.48 and the electric bill was $42.07. By depreciation I mean one-thirtieth of the cost of the house each year. I said my taxes were four hundred and some odd dollars. That covered all the taxes I had to pay, that is, village tax and county tax. That does not cover the tax on the house I am now living in. $20,000 was the sale price of the property I am now living in. I have a loan on it. I don't collect any rent from that. I don't know what I would have to pay for rent down there in the neighborhood I am living in if I did not own it. You ask how many rooms has it got? I say three bedrooms, two baths and it is a one-story ranch-type house. It has a cement tile roof. The lot is 75 by 145. It is in the northeast section of Miami. I do not know that I could rent that property for $300 or $400 a month for the winter season. I live in the residential section of Miami. You ask me if $25,000 or $30,000 homes are all

around me. I say, no, sir, they are the same type, and there are three old houses in the neighborhood right across, built of cement blocks. My house has hardwood floors and all conveniences. I have a radio and a telephone. I bought that house in August, 1948. The people in that area are home owners."

The trial court has a discretion whether or not, under the facts in a case, to adjudicate the defendant in contempt of court, and the discretion of the trial court will not be disturbed unless abused. See *Swindell* v. *Swindell*, 208 *Ga.* 727 (69 S. E. 2d, 197). It will be noted that the wife and mother of the children involved, by simply saying "expenses $1018.49," reached the conclusion that she sustained a loss on the apartment house of $38.49 for the year 1951. However, she further testified that the purchase price of the duplex apartment house was $20,000; that in 1948 the two apartments rented for $100 per month each, that in 1951 the two apartments rented for $1570, and that in 1952, the apartments were rented, one for $85 per month and the other for $75 per month, or a total of $1920 per year. In addition to this, the wife saw fit to invest part of the funds, to wit, $15,000 that should have been invested in income-producing property under the terms of the alimony decree, in a three-bedroom, two-bath house in a residential section of Miami, Florida, in which she and the children lived. True it is she refused to give any idea of the rental value of this home; nevertheless, the trial judge was authorized to take into consideration this fact. In view of this testimony, the trial judge clearly did not abuse his discretion in adjudging the defendant in error not to be in contempt of court.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., not participating.*